**NORTH AMERICAN SPECIALTY INSURANCE COMPANY, Plaintiff,**

v.

**SEACOAST CRANE CO., INC., William J. Belanger, Bruce C. Belanger, Kristen E. Belanger, Defendants.**

**Civ. No. 04–206–P–C.**

United States District Court, D. Maine.

Jan. 31, 2005.

---

David P. Ray, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, Joseph C. Tanski, Marisa L. Jaffe, Nixon Peabody LLP, Boston, MA, for Movant.

## ORDER DENYING MAINE INSURANCE GUARANTY ASSOCIATION'S MOTION TO INTERVENE AND DENYING AS MOOT MAINE INSURANCE GUARANTY ASSOCIATION'S MOTION TO DISMISS

GENE CARTER, Senior District Judge.

Now before the Court is Maine Insurance Guaranty Association's ("the Association") Motion to Intervene as an Indispensable Party pursuant to Federal Rule of Civil Procedure 24. The Association asserts that intervention as a matter of right pursuant to Rule 24(a) should be permitted or, alternatively, that the Association should be permitted to intervene under Rule 24(b). Finally, the Association argues that, if the Court determines that the Court lacks jurisdiction because the Association's joinder would destroy diversity jurisdiction, then the Court should dismiss the action pursuant to Rule 19(b), because the Association is an indispensable party. Plaintiff North American Specialty Insurance Company ("North American") does not oppose the Association's intervention, but does oppose the Association's alternative relief that the case be dismissed for lack of jurisdiction. Defendants Seacoast Crane Co., Inc. ("Seacoast"), William J. Belanger, Jr., Louise H. Belanger, Bruce C. Belanger and Kristen E. Belanger have not responded to the Motion.

### FACTS

In its Complaint, North American alleges the following. On or about March 17, 1995, Defendants Seacoast, William J. Belanger, Jr., Louise H. Belanger, Bruce C. Belanger, and Kristen E. Belanger executed an Agreement of Indemnity (the "Indemnity Agreement") in favor of North American. North American then issued a performance and payment bond at the request and on behalf of Seacoast, as principal, for a project for DCC Development Corporation ("DCC") for the construction of Dinsmore Communications

Christopher A.D. Hunt, Cetrulo & Capone, Boston, MA, for Plaintiff.

Francis X. Quinn, Jr., Boynton, Waldron, Doleac, Woodman & Scott, Portsmouth, NH, for Defendants.

Corporation's corporate headquarters in Seabrook, New Hampshire (hereinafter referred to as the "Project"). On December 9, 2003, the Rockingham Superior Court in Massachusetts entered an order holding Seacoast and North American liable to DCC in connection with an action DCC commenced alleging breach of contract for work done in connection with the Project. In reliance upon the terms in the Indemnity Agreement, North American made a demand upon Defendants for the total amount of the losses, costs, and expenses as a result of the claim by DCC and the resulting Order of the Massachusetts Superior Court. Despite such request, Defendants failed to satisfy the judgment or reimburse North American On or about June 14, 2004, North American paid DCC the sum of $208,386.26 to satisfy the judgment. North American filed this lawsuit seeking reimbursement from Defendants pursuant to the terms of the Indemnity Agreement.

## DISCUSSION

There are two different types of intervention provided for in the Rules of Civil Procedure: intervention as a matter of right under Rule 24(a) and permissive intervention under Rule 24(b). *Fiandaca v. Cunningham*, 827 F.2d 825, 833 (1st Cir.1987). Intervention of right under Rule 24(a)(2) requires the following:

> (1) a timely application for intervention; (2) a demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest; and (4) a satisfactory showing that existing parties inadequately represent its interest.

*Pub. Serv. Co. of New Hampshire v. Patch,* 136 F.3d 197, 204 (1st Cir.1998). The failure of the prospective intervenor to fulfill any one of these prerequisites forecloses its ability to intervene as of right under Rule 24(a). *Id.*

In its Motion to Intervene, the Association alleges the following. H.L. Smith, Inc. was a subcontractor of Seacoast on the Project. Amwest Surety Insurance Company ("Amwest") issued a surety bond (the "Amwest Bond") under which Seacoast was obligee and H.L. Smith, Inc. was the principal. Apparently, the Superior Court in Massachusetts also ordered that Seacoast was entitled to recover fees and expenses it incurred as a result of H.L. Smith's defective performance on the Project. The total fees and expenses owed to Seacoast by H.L. Smith and Amwest is $36,170.79.[1] However, Amwest has been declared insolvent by a California court. Due to this insolvency, the Association claims that it may be charged with being obligated to pay certain "covered claims" arising out of the coverage of the Amwest Bond issued to H.L. Smith.

The Association relies on the Maine Insurance Guaranty Association Act, 24-M.R.S.A. §§ 4431 *et seq.* (the "MIGA Act"), in its proposed affirmative defenses to rebut its potential liability due to Amwest's insolvency. The Association claims that Seacoast may allege that if Seacoast is obligated on the judgment paid to DCC by North American, then the Association is obligated to Seacoast under the Amwest Bond on account of H.L. Smith's failure to perform its work on the Project. Therefore, the Association contends that it has a direct interest in the outcome of this action, the disposition of this action may impair or impede the Association's ability to protect that interest, and the Association's interest is not adequately represented. The Association asserts that it has a right, or alternatively should be permitted, to intervene to assert defenses that it has under the MIGA Act.

■ The Association filed its Motion to Intervene approximately two months after the Complaint was filed in this case but before Defendant had filed its Answer. Therefore, the Court finds that the Motion to Intervene was timely filed. With respect to the second requirement that there be a demonstrated interest relating to the property or

---

1. The Court notes that the Association was not a party to the lawsuit in the Massachusetts Superior Court where the judgments relating to the Amwest bond were rendered and there is no explanation provided as to why the Association did not move to intervene in that action.

transaction that forms the basis of the ongoing action, the Court does not find that the Association has such an interest in this case. The Association argues that its interest arises because "DCC [has an] obligation under the MIGA Act to exhaust all solvent insurance and the MIGA Act's requirement that the Association not pay any amount due an insurer." Maine Insurance Guaranty Association's Motion to Intervene at 3. DCC is not a party to this suit and the facts regarding H.L. Smith and the Amwest bond are also not part of the facts alleged in North American's Complaint. The instant action involves only issues related to the contractual indemnity of North American by Seacoast and the individual indemnitors. Neither North American nor Seacoast is seeking adjudication of any issue related to the Amwest bond.

Although this case does not raise or seek to adjudicate the liability of H.L. Smith for its performance on the Project or Seacoast's rights under Amwest bond, Seacoast does raise Affirmative Defenses related to the MIGA Act. Seacoast's Affirmative Defenses provide, in relevant part:

First Affirmative Defense

Plaintiff has failed to state a claim upon which relief can be granted because under 24–A M.R.S.A. § 4443, DCC was required to exhaust its rights against NAS and DCC's recovery from NAS applies to eliminate any obligation of the Association and Seacoast to NAS.

Second Affirmative Defense

Plaintiff has failed to state a claim upon which relief can be granted because 24–A M.R.S.A. § 4435 prohibits the Association from paying NAS and excuses Seacoast from any obligation to NAS.

---

2. Curiously, the Association's proposed Affirmative Defenses are word for word identical to the first two Affirmative Defenses asserted by Seacoast in its Answer.

3. The Association's application also fails part four of the Rule 24(a)(2) test. Part four requires the applicant to show that its interests are not adequately represented by the defendant. The Association asserts that its interests are not adequately represented "because [North American] is adverse to the Association and Seacoast may

Defendants' Answer to Complaint (Docket Item No. 7) at 4.[2] Even though Seacoast raises issues related to the MIGA Act, none of the factual allegations in the Complaint or the Answer address the Amwest bond. The Court finds that the Association seeks to introduce extraneous factual issues into the action and expand the issues being litigated. Having found that the Association has failed to satisfy the demonstrated interest relating to the property or transaction prong of intervention as a right, the Court will deny that part of the Association's motion under Rule 24(a)(2).[3]

Permissive intervention under Rule 24(b)(2) is available "[u]pon timely application . . . when an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b)(2). Rule 24(b)(2) vests the district court with "broad" discretion to consider whether permissive intervention will delay the lawsuit or prejudice the adjudication of the rights of the original parties. See Daggett v. Comm'n of Governmental Ethics, 172 F.3d 104, 113 (1st Cir.1999) (when faced with a Rule 24(b) request, a court may consider any rationally relevant factor, but it enjoys broad discretion in ruling on the motion); Amoco Oil Co. v. Dingwell, 690 F.Supp. 78, 83–84 (D.Me.1988), aff'd, 884 F.2d 629 (1st Cir.1989). The Association has not specified the commonality of fact or law required by the Rule. Nevertheless, as discussed above, the Court finds that the Association's potential liability and the main action do not share any questions of fact or law. The Association's participation in this case would add nothing but complexity to the case. The addition of these legal and factual issues to the present litigation would undoubtedly delay the adjudication of the rights of the original parties. For this

---

attempt to hold the Association responsible for any judgment against Seacoast." Maine Insurance Guaranty Association's Motion to Intervene at 4. Indeed, the record reveals otherwise. The two Affirmative Defenses proposed by the Association mirror the first two Affirmative Defenses asserted by Seacoast in its Answer. The Association has made no showing, as it must do under Rule 24(a)(2), that Defendants will not pursue their MIGA Act affirmative defenses to this lawsuit vigorously.

reason, the Court will also deny the Association's motion for permissive intervention.

After careful consideration of the merits of the Association's application to intervene under Fed.R.Civ.P. 24, and for the reasons stated above, the Court **ORDERS** that the Association's Motion to Intervene be, and it is hereby, **DENIED**. The Court further **ORDERS** that the part of the Association's Motion asserting that the case should be dismissed if intervention destroys the Court's jurisdiction be, and it is hereby, **DENIED AS MOOT**.